I see. Mr. Yes, your Honor. Thank you, Your Honor, and may it please the court. Congress gave defendants a clear choice. They could either stop rewarding terrorists for murdering Americans and stop using the United States as their home base for lobbying and other non-UN activities, or else they could agree to give American terror victims their day in court. Defendants now ask to be excused from their choice by having this court facially invalidate the PSJ-VTA, but the statute easily satisfies bedrock due process principles of fair notice and reasonably advancing a legitimate government interest in the context of our federal system. Indeed, the law— Let me just ask you, because it seems to me that we would be having a category of implied consent that has never been recognized by this court or the Supreme Court. Can you explain to me what the whole thing would be? It seems that you're urging that any contact that's So, to be clear, your Honor, deemed consent has been recognized both by the Supreme Court and by this court in cases like BAPSites. Yeah, I wasn't suggesting deemed consent hasn't been recognized, but you can correct me if I'm wrong. It's been recognized when it's been in a contract, it's been recognized when there's some benefit, and it's been recognized when it's some type of litigation-related activity, like in BAPSites, which you were just referencing. But I don't think there's ever been a case where something outside of those three categories has been downed to be consent. So, with respect, your Honor, I would say that the business registration cases, Pennsylvania Fire, there's a long line of cases up to, including the cases that the Supreme Court is currently considering. Those don't involve any case-related conduct, and there's also not necessarily a benefit that the state is able to, under the Dormant Commerce Clause, to grant. But even assuming that you would need some sort of benefit along those lines, we would have that in this case. The United States has the absolute right to exclude defendants from its territory, and thus... Counsel, could I just stop you following up on Judge Bianco's question? You point to the business registration cases. Okay. The Appellee's State, that implying consent to jurisdiction based on the defendant's choice to engage in non-litigation-related activities in the absence of some benefit or privilege, plainly the registration cases, conferred upon the defendant in exchange for consent. There is no such case. So, is there such a case? So, I believe that there is such a case, but I do want to make crystal clear... I know you think that's utterly irrelevant. No, no, I understand, Your Honor. I just want to make clear the business registration cases are no different than this case in the sense that the United States is allowed to exclude the PLO and PA from its territory, and therefore can admit them only if they agree to consent to a limited category of federal claims brought by American plaintiffs. And so that's the same category, even assuming that there has to be a benefit. Any case other than the business registration cases? So, I think that cases appointing an agent for service of process, for instance, there's no benefit there. You just have to appoint an agent for service of process. So, that was the Brown case, for instance. And what's notable about that case is, even though there was no connection whatsoever between the jurisdiction creating conduct or the conduct alleged to create jurisdiction, which is registering an agent for service of process, and there was no benefit being conferred, nevertheless, the Court very carefully went through the due process standards of fair notice and a reasonable advancement of a legitimate government interest in the context of our federal system. And with the Court's permission, I would love to just... Could I just... Please. Stop you following up. Sure. In the College Savings Bank case, the Supreme Court said that constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and that this type of consent is simply unheard of in the context of other constitutionally protected privileges, namely outside the realm of state sovereign immunity. Yes. Now, in your brief, you say that that dicta was simply incorrect. If we agreed with your position, how do you propose that we write a decision? This is what the Supreme Court said. It said it with a majority quite firmly. Do we say the Supreme Court was simply wrong? So I would... You say incorrect. Sure. So I would suggest that you would point to a much more on-point discussion of the waiver of constitutional rights in cases like... But let's just stop with College Savings Bank. What do we do with that? Do we say the Supreme Court was simply wrong? So I think you would say the Supreme Court overstated the extent to which you need a heightened standard for the waiver of constitutional rights, and it made a much more direct statement about that waiver in the context of personal jurisdiction specifically when it talked about it in the Bauxites case, and it also talks about when you need a heightened standard for fundamental rights in the Schneckloth v. Bustamante case. You refer in your brief to Schneckloth as a case of constructive consent. Is that right? That is how the court referred to it in that case itself. Well, the facts of Schneckloth, a policeman stopped a car and asked, could he search? And the occupant of the car said, sure, go ahead. So the reason... That's constructive consent? So the reason that the court referred to it as constructive consent is because it was to say no. And still the court said that was valid consent. But it was expressed consent. Sure. It wasn't constructive consent in the way of deemed consent that we're dealing with here. Sure. So other cases involving deemed consent are cases like the Sukent case or Carnival Cruise Lines where, again, there was reasonable notice but not actual notice. Here, there was the most perfect form of actual notice you could ever imagine. And the form of the ticket in Carnival Cruise Line was not actual notice? It was not actual notice in the sense that there was no allegation that the defendants had actually read it. Here, the plaintiff, the defendants actually lobbied against this law because they knew exactly what it would subject them to. Your Honor, if there had to be some connection between the condition giving rise to jurisdiction and the actual dispute, then the discussion in Brown could have been one sentence long because there was not even a whisper of a connection in that case. Nevertheless, the court applied the bedrock due process standards of fair notice and reasonably advancing a legitimate government interest in the context of our federal system. And that is all that we're asking for in this case. Isn't it a fact, Mr. Kennedy, isn't it a fact that if the PLO, for example, had a program of life insurance or a program of some sort of disability insurance to take care of the dependents of members who were disabled or something like that, that this statute would make the payment amount to consent even in circumstances where it was in no way motivated, where the death or the imprisonment, where the payment was in no way motivated by the fact that the death or imprisonment was related in any way to terrorist activities without even knowledge of that fact? If the PLO had a life insurance program and a person who had as his designees, who had committed acts of terrorism and died as a result of them and designated people as his Well, just as it would if he died of old age or died from a fall off a ladder, isn't that true? So three different points, if you'll indulge me, Your Honor. First, that's not how we read the by reason of language, which we think has to be tied to the act of terrorism. But second, even assuming you think we're wrong about that, that at most would give rise to an as-applied challenge in a situation unlike this one, where the death was unconnected. And finally, Your Honor, I think it's pretty clear that they are not paying these rewards to people who die of old age or who end up in prison because of embezzlement. I understand that, but the statute would authorize the inference. So admittedly, you might read it that way. We would respectfully disagree. But at most, that would give rise to an as-applied challenge. It would not be grounds for facially invalidating the statute in our view. All right. Thank you, Mr. Ketterer. We'll now hear from the government, who is the intervener in this case, Mr. Torrance. Mr. Torrance, I see you reserve two minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honor. And may it please the Court, Benjamin Torrance on behalf of the United States. I want to emphasize today the foreign policy aspect of the PSJBTA. The purpose of that statute is to make the Antiterrorism Act's remedy effective. And it's important to note that the Antiterrorism Act is not simply about individual compensation for victims of terrorism. That would be an important goal in its own right. But it's also about a foreign policy enactment. It's part of what's been called the government's comprehensive legal response to international terrorism. Mr. Torrance, isn't that argument contingent upon there being a less stringent due process standard for the Fifth Amendment as opposed to the Fourteenth Amendment? And haven't we, in a prior decision in this case, as well as in Chu B. Biedriger, said that they are coextensive, that there's not a different test. So wouldn't you have to be ignoring binding precedent in order to take that into consideration? We certainly acknowledge that prior holding. But we do not think that there has to be a different test, although we do believe there should be. But it would be contrary to that prior holding. It doesn't have to be because the standard under the due process clause, as enunciated in going back to International Shoe and even before that, is fair play and substantial justice. And all of the tests for personal jurisdiction under the due process clause involve balancing of interests. The Burger King Court set out a list of factors to be considered in that balancing, and one of them, of course, is the interest of the sovereign where the forum sits. The United States has very strong federal interest in foreign policy. Counsel, do you mean that? No. Okay. No, I defer to Judge Giacchino. I was just going to throw out a hypothetical, whether you're, when you say foreign affairs, you're limiting it to terrorism. Suppose you had a foreign company with no presence at all in the United States that defrauded people overseas, and among those happened to be U.S. nationals. Suppose Congress passed a law that says unless that company fires the CEO, they will be deemed to consent to being sued in the United States for fraud. Would that be constitutional or not? Well, obviously we'd have to consider the specifics, but I do think that, again, the overarching framework is fair play. The specifics are exactly the same situation. They're making payments to a CEO, defrauding a bunch of people, including Americans, but have no presence in the United States. I think that would be more susceptible to being challenged on grounds of fair play and substantial justice if it were singling out a specific company or singling out a specific CEO or really tying jurisdiction in that way to that specific conduct. But in this case, we have something quite different. We have the protection of U.S. nationals. We have the foreign policy interests, and we have a very limited statute that's tied to ATA claims brought by U.S. nationals for acts of international terrorism, and that's limited to two defendants and their affiliates. Counsel, the fact that there is a foreign affairs rationale for Congress in passing the statute, if we concluded that the statute was unconstitutional under the analogy to College Savings Bank, for example, why would the fact that there was a foreign affairs reason for passing the statute suddenly make the statute constitutional? Foreign affairs can't override what are the personal constitutional rights of the defendants. It certainly does not override constitutional rights, but it does play an important role in the balancing of interests that is part of the due process analysis, and it's a much stronger role, it's a much stronger interest than in Judge Bianco's hypothetical. The idea of the comprehensive legal response to terrorism, of deterring and disrupting terrorism, of using triple damages in order to cut the financial lifeline of terrorist networks, and of addressing as part of a decades-long history the United States' unique relationship. If there were no foreign affairs rationale for the statute, would the statute be unconstitutional? It would certainly be a much steeper hill for us to climb, I would certainly admit that. I think that Congress has to be given some leeway in the foreign affairs realm, and that is part of our argument. Mr. Torrence, this isn't really a narrow exception. If you define the interest as foreign affairs, and in this case terrorism, Congress could decide there's a whole host of entities out there, including banks and other entities, that somehow may be involved in funding terrorism in some way. They could deem to consent to all types of jurisdiction in the United States, even though they may have insufficient specific or general jurisdiction. I don't see why this is narrow. If all you need to have is foreign affairs rationale combined with some national security reason, we're trying to reach a particular entity or company. There's a lot of companies and entities in that world. Obviously, Congress might be able to do more than the statute we're defending here, but I do urge the court to address only the statute before it, which I think is, as I was saying, limited to these two entities that have this unique relationship, non-sovereign but governing authority. There is clear notice. There is a clear opportunity to cure it. Could I stop you on that also? Please. Why is the constitutionality of the statute helped by the fact that it's specifically directed against two entities? That would suggest that you could pass statutes directed against individuals, people who are unpopular, and by doing that, deprive them of constitutional rights just because it's just a few. So two responses. First of all, the Supreme Court in both the Nixon and Bank Marcazzi case has confirmed that directing a statute at a particular entity is not in and of itself a constitutional problem. Congress is permitted to address a narrow problem like that. But it doesn't help. I think in this case it does help because of the history at issue, because the Congress and the executive branch have a decades-long history of concern about the PLO's prior support of terrorism, its commitment to renounce terrorism, its commitment to further peace in the Middle East, and using conditions on U.S. presence and using other measures in order to ensure that the PLO and the PA abide by those commitments. And I think that that ties the statute at issue here very closely to that foreign policy rationale and the action against international terrorism. And, of course, that's the only action that's permitted to proceed with the personal jurisdiction that's authorized by the PSJ-BTA. I would also say it makes sense. Congress is basically saying to these two entities that make these payments, and we're not weighing in on the facts, but I understand they've conceded for the purpose of this appeal. The two entities that make these payments, if you continue to incentivize international terrorist acts against U.S. nationals, you will be held to account for international terrorist actions against U.S. nationals. It's closely tied together. Could I ask you a factual? The activities that are described in prong two of the statute, are those activities in the United States currently illegal under current law unless there were an exemption, which they don't have? It is correct that there is no current exemption from I think it's section 5202. So those activities would otherwise be unlawful? I'm not prepared to state a firm position on that, but I do think that that's a... That's the way in which I read your brief, so I may have overread it. But whether they're unlawful or not, Congress can attach conditions to if they happen. And Congress has listed these things and said, look, if you are going to continue to operate in the United States, whether or not you have that waiver, if you continue to... Well, actually, I'm sorry, it does exempt if there is a waiver. But if you do do these listed activities, again, they're subject to conditions. It's subject to the absolute power of the Congress to exclude the PLO and therefore to attach conditions. And they've used those conditions historically to, again, ensure that the PLO and PA abide by their commitments to peace and renunciation of terrorism. This is of a piece with that. And so when I say that it's narrow, I think it has to be considered in the context of that history. It has to be considered in the context of that historical relationship. All right. Thank you, Mr. Torrance. We'll now hear from the PLO. Mr. Berger. Thank you, Your Honor, and may it please the court. I'd like to address the court's questions, but I want to start by correcting a false premise in the appellant's argument, which I think makes the answers easier, which is this is not a facial challenge. This is an as-applied challenge to the statute, and the reason why, and this answers Judge Bianco's initial question and Judge Kodal your question about what are the standards that would apply here. The reason why, as an as-applied challenge, this is an easy one, is that both this court and the D.C. Circuit already have held that the conduct at issue is insufficient to support jurisdiction over the PA and the PLO in these claims and claims of this type. That makes this case easy because what Congress set out to do, and this goes to Judge Bianco to your initial question, was to say we're going to take conduct that the judicial branch has already declared insufficient to support jurisdiction, and we're going to say by giving mere fair notice and an opportunity to stop that we can convert jurisdictionally insufficient conduct into jurisdictionally sufficient conduct, which leads me to your question, Judge Kodal, what are the standards? I respectfully suggest the standards that would have to apply in a case like this come right out of Bauxite. Bauxite said if you're ever going to try to draw a jurisdictional presumption, and that's the word that is used there, but whether it's a presumption or an inference or deeming, it's the same concept. In order to draw a jurisdictional inference, the conduct at issue has to support the presumption. In other words, support a jurisdictional finding. This is made clear in a Southern District case we cited at page 43 of our Socolow brief, which I commend to the court, called Volkart Brothers v. Motor Vessel Palm Trader, 130 FRD 285 of 289. There, Judge Robert Carter said, okay, how do I tell the difference between a jurisdictionally sufficient presumption that's consistent with Bauxite and a penalty, which Bauxite says and College Savings says. But, Mr. Berger, Bauxite isn't the only category of implied consent. You can, by virtue of getting some benefit, subject yourself to the jurisdiction of the court. I want to follow up on Judge Kodal's questions to Mr. Torrance. I'm interested, too. Explain to me why, if the United States could ban the PLO completely from the United States, but says we're going to allow you to have your UN mission and not anything else, and if you do anything else beyond that UN mission, you're subjecting yourself to jurisdiction for this category of cases. Why isn't that permissible? So if I may address both parts of that question, Your Honor, the first part is that we have conceded and we have said in our brief that there are two recurring scenarios where an inference consistent with due process about consent to jurisdiction may be drawn. One is Bauxite, which talks about a presumption of submission, and the other is the reciprocity, the acceptance of a benefit, as Judge Bianco, as you mentioned. That is held to be implicit submission to jurisdiction, really for precisely the same rationale. If I take a benefit, then I am implicitly, I give rise to a presumption, my conduct will support a presumption that I've accepted jurisdiction. Those are the two recurring scenarios. This goes back to your opening question, I believe, Judge Bianco, which is has the law recognized anything? We know of two scenarios and two only. One is the reciprocity example. The other is a Bauxite presumption. Let me now turn to the second part of your question, which is the government's argument and the plaintiff's argument about U.S. activity is based on a false premise. The false premise is that the government still holds what I'll call the antecedent authority. This is the same issue that came up before the Supreme Court in Mallory. Does the government, does the forum have antecedent authority to exclude or impose conditions on the defendant such that by saying, okay, you can come in, but here are my conditions, sort of a my house, my rules argument? And the answer is ever since the United States versus PLO in the Southern District, which, again, we cite in our brief, it has been clear that the U.S. activities at issue here, again, an as-applied challenge, the U.S. activities at issue here are not subject to that antecedent authority that you mentioned, Judge Bianco, because according to U.S. versus PLO, the United Nations Headquarters Agreement represents a divestiture long before the 1987-18. They're alleging that it goes beyond that exemption, and I don't think the district court made a finding in all of their allegations about consular services and press releases and social media presence. There was no finding that all of those things fall within the answering commission activities. So we need the conclusion. I respectfully disagree with that. At page 14 of Judge Furman's opinion in full, he expressly says what the PSJVTA does is take conduct that has already been declared insufficient to support jurisdiction both in Waldman 1 and in the trio of D.C. circuit cases and now tries to give them jurisdictional sufficiency. The district court quite clearly addressed the type of activity at issue here, which is why it's important. The district court didn't say it's within the U.N. exemption. The district court just said the context or, you know, the activities are insufficient. But my question is why? How much activity? If, as Judge Kodal said, this is illegal, why can't the United States say if you're engaging in illegal conduct by engaging in activities that you're not permitted to engage in, then you're subjecting yourself to jurisdiction? Well, let me try coming at it another way, if I then may do so, Judge Bianco, which is I believe Judge Kodal asked the question, under the 1987 ATA is all of the conduct here alleged to, is it illegal? And that leads to the question, does the PSJVTA allow anyone on the defense side to engage in activity made illegal under the 1987 ATA? And the answer is no. PSJVTA doesn't allow anything. That's why this is not, as the government tries to characterize it, an admit unconditioned statute. PSJVTA does not say you may enter this form and you may do the following things, but only if you agree to jurisdiction. What it says is conduct in the following category of exemptions, all of which represent the jurisdictional status quo, cannot be factored into by a court in assessing jurisdiction. And that's, I think, the answer, Judge Bianco, to your question, which is it is possible certainly to construe or to come up with scenarios where the defendants could engage in conduct that has not previously been adjudicated insufficient that would make that conduct fall within the statute and possibly give rise to jurisdiction. In this as-applied challenge case, none of the conduct at issue is conduct that a court hasn't already looked at and said it's jurisdictionally insufficient. I believe you mentioned, Judge Bianco, consular services, and I don't want to let that go unrebutted because I'm sure we're going to hear about it on rebuttal, which is three district courts looked at that allegation. In the Schatzky case, which Judge Daniels adopted in his decision, there was jurisdictional discovery at this point. This is not defendant's conduct. That is the key point. This is conduct of independent actors that the defendants try to impute to the defendants. But even putting that aside, Judge Furman looked at all of the allegations, including consular services, and he said at all events, all of the conduct here, and this is the key point, if I may, all of the conduct here is not sufficiently tethered to the claims at issue here to support jurisdiction. That's because the conduct has to be to satisfy bauxite, to give rise to a jurisdictional presumption. It has to be jurisdictionally sufficient conduct. Suppose they opened up an office. Suppose they opened up a separate office other than the UN mission. Could they be deemed to consent to jurisdiction if they opened up a separate office? I'm delighted you asked that question, Judge Bianco, because that makes the point that this is an as-applied challenge, and that's how it was taken by the district court.  Suppose they reopened the Washington mission to the United States without permission to do so. Now they have a contact with the United States that is not covered by the jurisdictional status quo, not covered by Waldman 1, not covered by the 3 D.C. Circuit case. Now you've gotten to one of two elements necessary to create a jurisdictional presumption. You have a contact with the United States. But if the Ford case teaches us anything, it is that you must go further than just a contact with the form. It has to arise from or relate to the claim. And merely opening a Washington office, I respectfully suggest, could not support jurisdiction unless the claim arises from or relates to the presence of that office. But we don't have to deal with that perfectly fair question because this is an as-applied challenge. And all of- Why do you keep referring to this as an as-applied challenge? The lower court, or rather the district court, held the statute to be unconstitutional. It didn't make all of the findings with respect to the specific activities, with respect to Prompt 2. It said the allegations, I think, with respect to Count 2 were too conclusory. But in any event, what the court said was this was plainly an effort to make constitutional what the Court of Appeals had found was unconstitutional. And deemed consent, constructive consent, in that context was unconstitutional. Why is that an as-applied analysis rather than a facial challenge to the statute? I'm simply taking Judge Furman at his word when he says at the bottom of page 14 and to the top of page 15 of his opinion that the second prong, he says, and while the second prong relating to offices and other facilities in the United States and activities while physically present in the United States does relate to the United States, the conduct, at least as alleged in this case, is too thin to support a meaningful inference of consent. What he said was not I'm striking down the statute. He's saying the statute cannot provide a constitutional basis for jurisdiction in this case. And it does matter because Judge Bianco asks a fair hypothetical. Can't you dream up a circumstance where it hasn't previously been adjudicated by this court in Waldman or by the D.C. Circuit in its trio of cases where maybe the language of the statute could identify U.S. activities that the United States still retains as antecedent authority to prohibit and couldn't that give rise to jurisdiction to parrot the words of Judge Furman? We have to reach that question in this case because that's not this case. Judge Furman made it perfectly clear on page 14, before the language I quoted, that we're dealing with conduct that the Second Circuit and D.C. Circuits already have held insufficient to support personal jurisdiction. Are you not, I'm sorry, Judge Bianco, are you walking back from what the Supreme Court said in the College Savings Bank? Not. Which Judge Furman found so persuasive? No, not at all. And what I think what College Savings tells us, and I'm happy to address it precisely in the language there, College Savings says that if the conduct at issue is not jurisdictionally significant, what was the jurisdictionally significant conduct in College Savings? One of two things Justice Scalia wrote. He said it's either altogether voluntary consent, right, which we dispute exists here, or there's a gratuity, which goes to Judge Bianco's opening question to me about, won't a gratuity support jurisdiction? What College Savings says is you've got to look at the facts and circumstances of the case to see if it supports an inference, and there it didn't, and Judge Furman was right, because we urged him to apply College Savings, to say the facts and circumstances here don't. But College Savings Bank plainly was dealing with a waiver of state sovereign immunity. But it then went on to talk about the constructive consent to the waiver of other constitutional rights, and it said that that was unheard of with respect to other constitutional rights. And we wholeheartedly agree with that. That was our argument to Judge Furman and to Judge Daniels. They agreed with us that the circumstances here cannot allow the PSJBTA constitutionally to support jurisdiction when the conduct at issue, indisputably, already has been adjudicated to be jurisdictionally insufficient. What College Savings did, two quick points if I may, Judge Kotel, is number one, applied a waiver test. It's functionally the same as the waiver test we have here. Justice Scalia said, well, there's a difference between altogether voluntary waiver of a constitutional right and imposing jurisdiction. Altogether voluntary is functionally the same test as knowing and voluntary. And the second thing, Judge Kotel, as you pointed out, the court went out of its way and Judge Furman seized on this to say this cannot be cabined to state sovereign immunity because the rights at issue, constitutional rights, are not generally subject to a doctrine that they can be waived when Congress basically sets up a trap that says, if you don't heed our warning, you're subject to jurisdiction. If I may, just refer back to your opinion in Walden 1, which I think it does help answer this question. There, the same plaintiffs argued that there was consent to jurisdiction because the Antiterrorism Act allowed service on an appointed agent for service of process as a basis for jurisdiction. And indeed, that's who was served in Walden 1. And Your Honor wrote for the court in Walden 1, the statute doesn't answer the constitutional question of whether due process is satisfied. The same analysis applies here. Just because there are foreign policy interests, government interests and the like, as Mr. Torrance said, or just because fair warning is given, it doesn't answer the constitutional question. What's the constitution? Shouldn't we consider what the Supreme Court's going to do in Mallory? In other words, if the Supreme Court in Mallory finds that by registering, you're subjecting yourself to generalist jurisdiction, doesn't that inform Walden 2? Far be it from me ever to suggest what the court should do in terms of waiting for Mallory, but candidly, our view is however Mallory comes out, we win. And here's why. Because if Mallory upholds, if the Supreme Court in Mallory upholds the Pennsylvania Supreme Court, they will go even further than is necessary to go here to say that even though there's a clear benefit given by the form, Pennsylvania, right, the right to do business in Pennsylvania, that's not enough. That would take Hess even further than we say it needs to go. But if they come out the other way and they say, yeah, maybe the registering to do business would in the ordinary course be enough to subject for jurisdiction. But we think there's an unconstitutional condition here because the right to do business is so vital that it can't be conditioned on a benefit. Either way, we win because there is no benefit. How do we know that? Compare the predecessor to this statute, ATCA, which this court dealt with in Waldman, too. There the government was up front. They said, okay, here are two benefits that you get from the U.S. government, foreign assistance or a waiver allowing you to maintain an office in the United States. This court said never had to reach the constitutionality of ATCA because neither of those benefits was accepted. Here we turn to the PSJBTA. And I apologize, Judge Bianco, if I sound like I'm saying the same thing. But what makes the PSJBTA not a benefit statute is that none of the conduct that it specifies, as applied here, is conduct that the United States has the right to condition. U.S. versus PLO said none of the U.S. activity at issue here is subject to antecedent authority of the government, clearly right to make payments in Palestine to Palestinians is not subject to the government's authority. I want to make one quick point, if I may, about separation of power since I see my time is running out. And here's the thing, which is what courts do every day of the week in making jurisdictional findings, is they look at facts and circumstances. And they decide, do the facts and circumstances support an inference that someone has submitted to jurisdiction? But the PSJBTA says to the courts is, no, no, you can't do that prototypical judicial job of looking at facts and circumstances. You instead must find that if any of this conduct is engaged in, that there is a constitutionally sufficient inference of submission to jurisdiction. That treads on judicial branch territory. It's not exotic. It's not difficult. Courts do it every day of the week. They decide do facts and circumstances support jurisdiction. This goes too far. I'm sure I'll hear from my friends on the other side, Bank Markazi allows that. It doesn't. What Bank Markazi says is, so long as the powers at issue are not constitutionally assigned exclusively to another branch of government, Congress can change the rules of the game. Well, guess what? Due process is constitutionally assigned exclusively to the judicial branch. And what this statute tries to do is change the rules of the game, change the knowing involuntary test for submission, implied submission to jurisdiction, by trying to turn into sufficient conduct, conduct that uniformly has been held by this court and by the D.C. Circuit, as insufficient to support jurisdiction. Do you read 1A as requiring awareness or motivation on the part of the defendant PLO? Awareness and motivation by the fact that the defendant died, that the designor of the beneficiaries of the payment died or was imprisoned as a result of terrorist acts against the U.S.? I think the answer is it's hard to tell, but in short, by defining what is an act of international terrorism, the statute tries to take it out of the realm of state of mind and put it into factual terms, which is if these criteria are met, then those payments suffice. What we have done is challenged that factually, among other things, by saying one of the key components of the payments problem is whether someone was fairly tried or convicted. And goodness knows, and this court knows it better than I do, a fair trial is in the eye of the beholder, and the Palestinians certainly do not concede that the prisoners who are being held are fairly tried and convicted. Now, that's something Judge Daniels mentioned in his PSJB taping. For purposes of this appeal, we have said we don't contest that the payments prong applies, but this really goes to Judge Bianco's question, and then I'll shut up because I say I'm way over my time, which is does the government have antecedent authority to regulate Palestinian government payments in Palestine? Because if they don't, there's no ability to condition what the Palestinians are doing. There is no antecedent authority. My point, Mr. Berger, was not that they could regulate those payments, but they can regulate activity in the United States. That was my point. Yes, Your Honor, and I appreciate that. And that's why I do think it's important that Judge Furman went out of his way to say two things. One is, at least as alleged here, the conduct, point one, conduct at least as alleged here, point two, fits squarely within what this circuit and the D.C. circuit held is insufficient to support jurisdiction. So I'm happy to answer the court's questions. Otherwise, I would respectfully request that the judgment of the district court be affirmed. All right, thank you. And Mr. Ketam, you have three minutes to rebuttal. Thank you, Your Honor. Four quick points. First of all, this is absolutely not an as-applied challenge. There was no discovery allowed by the district court with respect to defendants' U.S.-based activities, nor whether they were aware of or made the payments because of the fact that Mr. Jabarin stabbed Mr. Fold. So it's not an as-applied challenge. The reasoning of the district court would invalidate the PSJVTA in all of its applications. Second of all, the proposition on which the defendant's case rests, that the United States has no authority to exclude the PLO or to allow them here subject to certain conditions, is as wrong as it sounds. The United States has an absolute right to determine who comes onto its soil. The U.N. headquarters agreement, even assuming it applies to the PLO, which we don't think that it does, even assuming it applies, that is a voluntary choice that the United States makes. And even beyond that, the U.N. headquarters agreement would only allow defendants here for U.N.-based activities. It would not extend to the non-U.N. activities that trigger conduct under the PSJVTA. Third. The appellees say that the non-U.N. activities are currently prohibited, so that under the statute the appellees are not receiving any benefits from the government. They're prohibited from conducting those operations. It's a prohibition that the United States can waive if it wants. But regardless, the fact that they are violating one of their obligations doesn't mean that it's worse for due process principles in order to impose this condition. If anything, it's better than the fact that they would be permitted to do so. But, Your Honor, of all of the errors that the district court made, perhaps the most egregious was throwing away the bedrock due process standards in favor of the dicta from college savings that there's a heightened standard that applies to the waiver of constitutional rights in all cases, which is not uncommon at all. In fact, there's a doctrine called the Unconstitutional Conditions Doctrine, which is designed to deal with precisely that scenario. And it answers... Could I stop you on that? Sure. Please. Sorry, I'm a little worked up. No, it's all right, since you brought it up. Judge Furman referred to this as a fundamental constitutional right. It's not clear to me that Judge Furman, when he used fundamental constitutional right, was using that in any sort of term of art. A constitutional right applied to the states under the 14th Amendment or something like that, or something from the Rotunda Treatise. You would agree, wouldn't you, that the international shoe constitutional right is a constitutional right? Absolutely. Hold on. You wouldn't describe it as unimportant? Just like the other waivable rights, like the First Amendment and the Fifth Amendment and the Fourth Amendment, it's certainly important, but a heightened standard does not apply, unlike rights that are necessary to secure a fair trial, which the Supreme Court says are fundamental, and therefore a heightened waiver applies in that situation. But College Savings Bank didn't refer only to fundamental constitutional rights? That's right. It was an overstatement, Your Honor, and it's inconsistent with Bauxite's, which says there's nothing about personal jurisdiction, which means that it has to be subject to a heightened standard. It can be waived just like all other rights. Do you place any sort of credence in the list of fundamental rights in the Rotunda Treatise? I mean, I saw it quoted in your brief, and I couldn't understand any sort of list of fundamental rights that doesn't even include freedom of press, freedom of speech, freedom of religion. Sure. Schnecklaus talks directly about which rights are subject to a heightened waiver standard, and it does not apply to ordinary rights, which are personal rights in this way. Schnecklaus was talking about rights in the context of rights as they apply in the criminal context and whether you have to have knowledge of the right in order to waive the right. That seems a long way away from the issues before us here. The standard for waiver of constitutional right is the unconstitutional conditions doctrine, which applies to precisely the scenario where the government wants to impose a condition on the exercise of a right, and it answers, Judge Bianco, your two examples and shows why the first one would not be okay, because it would be disproportionate. You need to have rough proportionality and a nexus. It would be disproportionate to require a corporation to fire its CEO just because the United States doesn't like it. On the other hand, your banking hypothetical is not a hypothetical at all. In certain limited areas where vital U.S. interests are affected by things that happen abroad, the United States requires foreigners, as a condition of doing business in the United States, to consent to jurisdiction in the federal courts. The Federal Reserve requires this. We require it under the federal import-export laws. We require it under a limited category of cases in which Congress has a particular reason not to want defendants to be able to hide behind jurisdictional defenses. Thank you, Mr. Kennedy. Okay. Thank you, Your Honor. We'll hear now from Mr. Torrence. You have two minutes, Mr. Torrence. Thank you again, Your Honor. A few quick points. First of all, I think College Savings Bank has come up quite a bit. I think the easiest way to distinguish that case is that College Savings Bank clearly held that there is no such thing as a constructive waiver of the 11th Amendment immunity. It just doesn't exist. Whereas box sites holds there clearly is such a thing as constructive waiver of personal jurisdiction. That puts it more in the box of Rowell v. Withrow or Wellness International, where the Article III right to an adjudication by an Article III court, which is, of course, also a constitutional right of a litigant, is waivable not only expressly but by conduct or by implication. So the fact that it doesn't exist in the College Savings Bank context, that constructive waiver doesn't exist, distinguishes that and makes College Savings Bank, I think, entirely irrelevant to the analysis here. But that's not what the dicta said in College Savings Bank. Admittedly dicta. But it wasn't limited in the way you suggest it was limited. I think all dicta has to be read in context. And, you know, I think I was in some of the cases about personal jurisdiction, there's a statement in the Schaeffer case that says all cases have to be considered on the context case. And then in the Burnham case, they later said, well, yeah, that statement is quite broad. But in context, it doesn't actually mean that. I think the same analysis applies here. In context where there is no such thing as constructive waiver, the court is saying basically be very cautious about allowing a constructive waiver. But they've done so in Bauxite and in the other cases I referred to. But Bauxite was a very limited case. I mean it was in the court. It was on a motion for personal jurisdiction. The defendant in that case refused to produce discovery. Right. That would have shown that it was otherwise subject to personal jurisdiction. That seems a long way away from the statute. The facts are a long way away, but I think that Bauxite has to be read, the way it's structured is instructive as to how to read it correctly, I think. It starts out by saying here are the fundamental principles of due process, without discussing the actual conduct at issue in that case, without discussing Rule 37 or, you know, the specific waiver. They talk about the general principles of personal jurisdiction under the Due Process Clause, and they say it can be constructively waived. It can be impliedly waived. It's only then that they turn to what my adversary was talking about, the specific jurisdictional waiver. But if you follow that, then you end up with what the appellees say, because you end up with Congress making it unconstitutional to continue to do what this court said is a violation of due process under international shul and its progeny. But it's a different test if it's under the, and I think that throughout, my adversaries have conflated all the different tests of personal jurisdiction. And to say that something is not allowed under the specific jurisdiction test or the general jurisdiction test somehow necessarily means that it's not permitted under the broader fair play and substantial justice, or as the Burger King Court put it, not unjust and not unreasonable test for consent jurisdiction. That's a conflation that is not proper. No, but then we have to determine what truly is consent in the context of a deemed consent statute. We have to determine whether the conduct that Congress has deemed to be consent, whether that structure is fair play and substantial justice under all the circumstances. Can I say a few about Frong too? Because I want to go back to Judge Cole's distinction and see if I can get your response to it. It's not a benefit that's being concluded because they're not allowed to do it. So doesn't that create an issue if we're talking about fair warning? At the PLO, it's not as if Congress said if you open an office other than the UN, you're consenting jurisdiction. There's this broad prohibition of not doing anything other than UN work, but they wouldn't exactly know where that line is. So how can it be implied consent if we're in that world of prohibited conduct that's not specifically defined? Yeah, I just think that it doesn't have to be the kind of this-for-that structure that my adversaries have said it has to be in order to be a condition on entry. I think it's fair warning. Their position is social media and press releases are part of the UN work. So how do they have fair warning that Congress thinks if you do those things outside UN work and you're consenting to jurisdiction? They have no idea, right? Yeah, I understand. I think the government has not taken a position on the facts of the case, on the actual presence that has been proven or might be proven or on which discovery might be appropriate. I understand we're still at the pleading stage in the FOLD case. And having not taken a position on that, I don't think we're prepared to take a position on specifics of what would qualify. Our position is simply that the court should uphold the statute as constitutional. I do want to just say one question, if I may, in response to Judge LaValle's question about the interpretation. I do think we do think that it is limited to actions that it wouldn't cover the life insurance type of policy because of that by reason of language. And I think that if there is an ambiguity in that, it's resolved by Congress's purpose. It's clear intent to go after something that incentivizes acts of terrorism, which Congress has explicitly found those payments to do. And the payments that were hypothesized in the life insurance context would not do that. Isn't that a pretty big jump in the reading of the statute? I don't think it is. I think that if such payment is made by reason of the death of such individual, that refers back to the rest of the sentence that comes before it, where that death is linked to an act of terrorism against a U.S. national. Thank you, Your Honor. We'll reserve the decision.